*TUCKER, P.
I do not think the principles of this case difficult to adjust. But the amount due from the ap-pellee to the appellants is not so easily ascertained.
The first question of importance' is the measure of the recovery. Is the appellant entitled to interest upon his advances, or must he sit down contented with his principal?
When a borrower comes into equity seeking relief against usury, he is, by the principles of the-court, bound to do equity by paying up both principal and interest. Our act of assembly, however, provides that any borrower may exhibit his bill against the lender, and compel him to discover upon oath the money lent, and if thereupon it shall appear that there was usury, the lender shall be obliged to accept his principal money without interest. 1 Rev. Code, ch. 102, l 3, p. 374. I incline to think that wherever a case is strictly within this section, and the borrower insists on its protection, he can only be compelled to pay the principal; and that herein the principle of equity is modified by the statute. But where a case is not within the third section of the act, or where its protection is waived, the principles of equity have the strictest application. Such is the case of a bill filed to recover back what has already been paid. In this case it is now well established that the borrower can only recover back the usurious interest; thus leaving to the lender the enjoyment of his legal interest, as well as his principal.
The case before us I take to be not within the third section of the act. It is certainly not within its letter. The bill here is not exhibited against the lender, but against his representatives. The bill under the statute must be exhibited against the lender himself, and call upon him to discover the money lent. If the plaintiff rests upon the disclosure of his adversary, he shall pay only the principal, and the usurer shall receive no more. But if he declines, during the usurer’s lifetime, to exhibit *his bill, and to afford him an opportunity of explaining the transaction, and of shewing what is justly due, it may well be doubted whether it was designed that he should be absolved from the payment of any portion of what is justly due. Moreover, the usurer being dead, and it being no longer possible that the penalty can fall upon the guilty head, there would be much reason for distinguishing the innocent representative from his rapacious ancestor. He, at least, has done nothing which forbids, him to look for sheer justice at the hands of a court of equity.
Be this as it may, there is another ground on which the case may securely stand. The plaintiff in his bill clearly puts his case upon the general principles of equity, and excludes it from the operation of the third section. His prayer is, that “all compound, illegal and usurious interest may be expunged; that he may have such relief as his case may require and justice may dictate; and that all persons may be released from the penalties of the statute.” I can understand this in no other way than as expressing a willingness to pay principal and legal interest. That is what justice dictates, and what every honest man will do. And shall we reject the plaintiff’s proffer to be honest? Shall we, by a forced construction of the prayer of his bill, interpret him to refuse to pay what he justly owes? Shall we really enter into the views of his counsel, and construe a prayer to expunge illegal interest, as a prayer to expunge all interest whatsoever? and this too upon the singular hypothesis, that in usurious contracts, even legal interest becomes illegal? I think not. And if, as I conceive, the plaintiff is fairly to be understood as waiving the penalty, and proffering to pay principal and interest; a court of equity will not be so eager to enforce a forfeiture, as to compel the defendants to receive their principal only, and leave the plaintiff in possession of the interest which, upon its own principles, he ought to pay.
*The second question to be settled before we enter upon the facts, is as to the effect of the bonds as evidence. It cannot be denied that the bonds, as securities for money, are void. It cannot be denied, moreover, that where there are manifest signs of fraud (or usury) in the obligee, he ought to be put to the proof of actual payment. 3 P. Wms. 289. Yet this general rule admits of exception or modification. Por where, as in this case, a borrower lies by until the death of the lender, and then calls for proof of the *579 moneys advanced, a court of justice would be cautious in the application of the rule. But where the borrower has moreover taken up all the original evidences, as is the case here; where he has, therefore, all the means of explanation in his own hands, yet fails to make it; where he comes into equity asking relief, and yet omits to set forth the money borrowed, so that equity may lay him under the customary terms of paying the amount with interest, I cannot think the rule could fairly be applied. If he has not furnished in his bill a statement of facts, within his own knowledge, and resting upon documentary evidences which have been delivered up to him, so as to enable the court to administer its justice between the parties, he cannot complain that it should look to the evidences under his own hand for proof of the facts. And where, as here, he has lain by till the lender’s death, he could with no show of reason expect to throw the onus probandi upon those who were not actors in the transaction, and are uninformed as to its character. The bonds in this case must therefore be resorted to as evidences (subject indeed to contradiction and explanation) of the amount which has been loaned.
In this case, however, there can be no difficulty. The plaintiff does not pretend that he did not receive large advances from the defendants’ intestate. But he alleges that in both the bonds for 3000 dollars and that for 752 dollars 57 cents, usurious interest was included, *and moreover compounded. The usury was 12 or 12% per centum; that is, 6 or 6% in addition to legal interest. We are of course left to infer that the residue of the bonds was composed of the advances. If, then, we purge the bonds of the 12 per cent, and of compound interest, we get the true amount loaned. And this is the more clear when we look to the prayer of the bill, which is only to expunge the illegal and compound interest, and sets up no pretence to scale the bonds because they falsely represent in other respects the amount due.
Let us, then, from all the sources of information furnished by the record, endeav-our to discover what the appellants are entitled to demand. In the obscurity hanging over the transactions, it will be impossible to ascertain this with certainty. A proximation is all we can hope for. And here, first observe, that as all the obligations are payable on demand, there can be no prospective usury in any of them. And as to the usurious interest accruing upon the several sums, I am of opinion that it was not included in the bonds of 3000 dollars and 752 dollars 57 cents. Por the scheme of the parties was to keep the usury separate and distinct, lest the bonds themselves should be tainted by it. This appears from the bond of £7. 12. 5. which the bill says was exclusively for interest, which, according to the terms of the loan, was calculated up to March 1820. It also yet more clearly appears from the bond of 63 dollars, which is distinctly stated to be for interest not put into the large bond. Of what it was made up, we can only conjecture. It was probably the balance, at its date, of the whole extra interest account. Taking the bonds then as containing no interest, the matter probably would stand thus: [Here the president entered into a statement of the account between the parties.]
*BROOKl5 and CABELL, J.,
declined expressing any opinion on the point, whether the third section of the statute against usury extends to the case of a bill filed, after the death of the lender, against his representatives. With that reservation, they concurred in the opinion of the president.
The decree entered by the court of appeals was as follows:
“'The court is of opinion that the transactions set forth in the bill were usurious, and that the bond of 3000 dollars and 752 dollars, though they are believed to contain no usurious interest in themselves, yet, having been given for money loaned on usury, are within the statute, and void as securities for money. But the court is further of opinion that as the borrower, at the successive settlements, got into his hands the documentary evidences of the transactions, and has failed to set forth the amount borrowed, the bonds above mentioned must be received as evidence, subject however to contradiction and scrutiny, and to be purged of usury, if it had appeared (which the court does not think) that their amounts were in any part composed of illegal interest. And the court is further of’opinion that the bill of the ap-pellee not being within the third section of the statute of usury, he is only entitled to relief upon the terms of pajfing principal and interest, and that the amount now due, after deducting the proceeds of sale by the deputy marshal under the decree made in this cause, is 1808 dollars and 72 cents, with interest thereon at the rate of six per centum per annum from the 23d day of February 1829 till paid, for which sum the appellants should be permitted to proceed. ” Therefore, decree reversed with costs. “And this court proceeding &c. it is further decreed and ordered, that the injunction awarded the appellee in the cause be dissolved as to the sum of 1808 dollars 72 cents, with legal interest *thereon from the 23d day of February 1829 till paid, and perpetuated as to the residue, and that the appellants be allowed to enforce their deeds of trust on the property not already sold by the marshal, so far as may be necessary for the payment of the said sum of 1808 dollars 72 cents, with interest as aforesaid, and the costs attending the sale:” and that the appellee recover his costs expended in the chancery court and circuit superior court.